UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
AMIR BUTT, on behalf of himself and all others similarly situated,

       Plaintiff,

  -against-

            1:18-cv-07017-AMD-LB

HF MANAGEMENT SERVICES, LLC., and
HEALTHFIRST PHSP, INC.

       Defendants.
-----------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**HARRISON, HARRISON & ASSOC., LTD**
David Harrison, Esq.
Julie Salwen, Esq.
110 State Highway 35, 2nd Floor
Red Bank, NJ 07701
Telephone: 888-239-4410
*Attorneys for Plaintiff,
proposed FLSA Collective members
and the proposed Class Members*

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................................ 1

**FACTUAL BACKGROUND** ...................................................................................................... 2

**ARGUMENT** ................................................................................................................................ 3

    **I.    LEGAL STANDARD** ....................................................................................................... 3

        A.    Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) .......................................... 4

        B.    FLSA Pleading Standard ......................................................................................... 4

    **II.    PLAINTIFF'S FACTUAL ALLEGATIONS ARE SUFFICIENT TO STATE A CLAIM FOR OVERTIME UNDER THE FLSA AND NYLL** ..................................... 5

        A.    Plaintiff Sufficiently Alleges 40 Hours of Work per Workweek as Well as Some Uncompensated Time in Excess of the 40 Hours. .................................................... 5

        B.    At this Stage, Prior to Discovery, Plaintiff Is Not Required to Plead Details Supporting Defendants' Knowledge of His Uncompensated Work ....................... 8

    **III.    DEFENDANTS CANNOT MEET THEIR BURDEN TO PROVE THAT PLAINTIFF WAS AN EXEMPT OUTSIDE SALESMAN** ......................................... 10

        A.    Employer's Place or Places of Business .............................................................. 10

        B.    Any Fixed Site, Whether Home or Office, Used by a Salesperson as a Headquarters or for Telephonic Solicitation of Sales Is Considered One of the Employer's Places of Business .............................................................................. 12

        C.    Plaintiffs Sold in Customers' Homes or Businesses in the Cases, Cited by Defendants, Where Plaintiffs Were Found to Be Exempt Outside Salespeople ... 12

**CONCLUSION** ........................................................................................................................... 13

## TABLE OF AUTHORITIES

**CASES**                                                                                                                                   Page(s)

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................... 4

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................... 4

*Bowen v. Baldwin Union Free School District*,
   CV 15-6829 (JMA) (GRB), 2017 WL 4083553 (E.D.N.Y. Aug. 23, 2017) ............... 7

*Briceno v. USI Servs. Grp., Inc.*,
   No. 09–CV–4252 (PKC), 2015 WL 5719727 (E.D.N.Y. Sept. 29, 2015), *rev'd on
   other grounds*, 09-CV-4252(PKC), 2016 WL 324964 (E.D.N.Y. Jan. 26, 2016) ........ 9

*Cangelosi v. Gabriel Bros. Inc.*,
   No. 15–CV–3736 (JMF), 2015 WL 6107730 (S.D.N.Y. Oct. 15, 2015) ..................... 13

*Catzin v. Thank You & Good Luck Corp.*,
   899 F.3d 77 (2d Cir. 2018) ..................................................................................... 1

*Chodkowski v. County of Nassau*,
   CV 16-5770 (SJF) (GRB), 2017 WL 10637956 (E.D.N.Y. Nov. 30, 2017) ............... 9

*DeJesus v. HF Mgmt. Servs., LLC*,
   726 F.3d 85 (2d Cir. 2013) ..................................................................... 4, 5, 8, 10

*Flood v. Just Energy Mktg. Corp.*,
   904 F.3d 219 (2d Cir. 2018) ................................................................................. 13

*Freeman v. Kaplan, Inc.*,
   132 F.Supp.3d 1002, 1011 (N.D.Ill. 2015) ........................................................... 11

*Fridman v. GCS Computers LLC*,
   17 Civ. 6698, 2018 WL 1581990 (S.D.N.Y. Mar. 27, 2018) ................................... 7

*Johnson v. Equinox Holdings, Inc.*,
   No. 16-CV-1520-LTS, 2014 WL 3058438 (S.D.N.Y. July 2, 2014) ...................... 7-8

*Litras v. PVM Intern. Corp.*,
   No. 11–cv–5695 (JFB)(AKT), 2013 WL 4118482 (E.D.N.Y. Aug. 15, 2013) ........... 4

*Lundy v. Catholic Health Sys.*,
    711 F.3d 106 (2d Cir. 2013) .................................................................................... 4, 5, 8

*Lusk v. Serve U Brands, Inc.*,
    No. 6:17-cv-06451-MAT, 2018 WL 826857 (W.D.N.Y. Feb. 12, 2018) ....................... 7

*Marcus v. AXA Advisors, LLC*,
    307 F.R.D. 83 (E.D.N.Y. 2015) ..................................................................................... 13

*Martinez v. Superior Healthplan, Inc.*,
    Civil Action No. SA-16-CV-870-XR, 2019 WL 1048856 (W.D. Tex. Mar. 5,
    2019) .......................................................................................................................... 13

*Mendez v. U.S. Nonwovens Corp.*,
    2 F. Supp. 3d 442 (E.D.N.Y 2014) ................................................................................ 8

*Nakahata v. New York-Presbyterian Healthcare System, Inc.*,
    723 F.3d 192 (2d Cir. 2013) .................................................................................... 4, 5, 8

*Ocampo v. 455 Hospitality LLC*,
    Case No. 14-CV-9614 (KMK), 2016 WL 4926204 (S.D.N.Y. Sept. 15, 2016) ........... 4

*Park v. FDM Grp. (Holdings) PLC*,
    No. 16 CV 1520-LTS, 2017 WL 946298 (S.D.N.Y. Mar. 9, 2017), *rev'd on other
    grounds*, 2018 WL 4100524 (Aug. 28, 2018) ................................................................ 7

*White v. Baptist Mem'l Health Care Corp.*,
    699 F.3d 869 (6th Cir. 2012) ......................................................................................... 9

**STATUTES**

28 U.S.C. § 1367(c)(3) ........................................................................................................ 1

29 U.S.C. § 213(a)(1) ........................................................................................................ 10

**FEDERAL RULES OF CIVIL PROCEDURE**

Rule 12(b)(6) .................................................................................................................. 1, 4

**REGULATIONS**

29 C.F.R. § 541.500 .......................................................................................................... 10

29 C.F.R. § 541.502 ..................................................................................................... 10-13

29 C.F.R. § 553.31 .............................................................................................................. 9

## PRELIMINARY STATEMENT

Plaintiff Amir Butt ("Plaintiff") worked for Defendants HF Management Services, LLC., and Healthfirst PHSP, Inc. (collectively "Healthfirst" or "Defendants") as a Marketing Representative. He brought this lawsuit on behalf of himself and others similarly situated to remedy Defendants' violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

As detailed in his Amended Complaint ("Complaint") (ECF No. 8), Plaintiff and other Marketing Representatives worked hours for which they were never paid during lunch, before and after their shifts, and on days that they were scheduled off—in addition to the forty (40) or more paid hours that they worked on the clock each week. Plaintiff brings claims for himself and other Marketing Representatives under the FLSA and the NYLL for overtime at one and one half times their regular hourly rate for all unpaid hours over forty (40) in a workweek. Plaintiff also brings claims under the NYLL for himself and other Marketing Representatives for all unpaid hours during the few weeks in which they did not work more than forty (40) hours and for notice violations under section 195(3) of the NYLL. Finally, Plaintiff's fourth claim for failure to pay commissions is brought pursuant to section 193 of the NYLL. Although Defendants purport to move to dismiss Plaintiff's entire Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), their Memorandum of Law only addresses Plaintiff's FLSA and NYLL overtime claims.[1] Therefore Plaintiff will only address his overtime claims in his Opposition to

---

[1] In a footnote, Defendants incorrectly imply that this Court would no longer have subject matter jurisdiction over Plaintiff's state law claims, if it dismisses his federal claims. (Defs' Br. 1 n.1, ECF No. 14.) Although this Court would have discretion to decline to exercise supplemental jurisdiction, should it dismiss Plaintiff's federal claims, it would not be compelled to dismiss his state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction") (emphasis added); *see also Catzin v. Thank*

Defendants' Motion to Dismiss the Amended Complaint, in that Defendants have not moved to dismiss Plaintiff's NYLL 195(3) notice violations and NYLL 193 unpaid commissions state law claims.

For the following reasons, Plaintiff respectfully asks the Court to deny Defendants motion.

## FACTUAL BACKGROUND

As detailed more fully in the Complaint, Defendants operate a provider-sponsored health insurance company, which offers Medicaid, Medicare Advantage, Child Health Plus, and Managed Long Term Care health insurance plans. (Am. Compl. ¶¶ 31-32.)  Defendants serve more than 1.2 million members in downstate New York. (*Id.* at ¶ 31.)  Defendants employed Plaintiff as a Marketing Representative to sell Medicare health insurance plans for Defendants. (*Id.* at ¶¶ 9, 33.)

Defendants assigned Plaintiff to sell from a fixed location inside NYCHHC at Coney Island Hospital and its associated Ida G Israel Community Health Center, inside CVS, and, at times, at doctors' offices.  (*Id.* at ¶¶ 38-40.)  On information and belief, Defendants had a contract with NYCHHC and CVS that allowed them to set up the fixed locations inside Coney Island Hospital, Ida G Israel Community Health Center, and CVS to which Defendants assigned Plaintiff.  (*Id.* at ¶ 37.)  Defendants provided Plaintiff with a table to work at and signs to set up at the locations to which they assigned him.  (*Id.* at ¶ 42.)  Plaintiff would work and make sales to customers at the table.  *Id.*  To make sure that Plaintiff was working at the fixed locations where they had assigned him to work, Defendants regularly audited those locations.  (*Id.* at ¶ 41.)

---

*You & Good Luck Corp.*, 899 F.3d 77, 79 (2d Cir. 2018) (vacating district court's dismissal of plaintiffs' NYLL claims after the district court had dismissed all of plaintiffs' federal claims).

Defendants regularly assigned Plaintiff to work five days per week from 9:00 AM to 5:30 PM. (*Id.* at ¶ 47.) During busy time periods, Defendants sometimes assigned Plaintiff to work six days per week. (*Id.*) Plaintiff's shift included a half-hour unpaid lunch break. (*Id.* at ¶ 48.) However, to make sales, Plaintiff regularly started work at 8:00 am, worked through his unpaid lunch break, and often stayed 30 to 60 minutes, or more, after the end of his scheduled shift to finish any sales he was working on, to assist/answer questions from current or prospective customers, to perform end of the day duties, to complete required paperwork, and to personally drive to Defendants' offices to drop off completed applications. (*Id.* at ¶¶ 50-52.) Furthermore, Defendants' management directed Plaintiff to give his cell phone number to prospective customers and printed his cell phone number on his business cards, resulting in Plaintiff performing work handling phone calls and emails from customers and prospective customers in the evenings and on his days off. (*Id.* at ¶ 53.) Defendants never compensated Plaintiff for these extra hours that he worked outside his scheduled shifts. (*Id.* at ¶ 54.) Plaintiff estimates that he worked approximately one to two uncompensated hours per day and more during busy seasons. *Id.*

Although Defendants now argue in their motion to dismiss that Plaintiff was an exempt under the outside sales exemption, during the time that they employed Plaintiff, Defendants classified Plaintiff as non-exempt and entitled to overtime in their Sales Incentive Plan, which informed Plaintiff of his agreed upon rate of pay. (*Id.* at ¶ 53.) The Sales Incentive Plan specified that Plaintiff would be paid a base salary plus per enrollment incentive compensation of $200.00 to $500.00 per enrollment. (*Id.*)

**ARGUMENT**

I.  **LEGAL STANDARD**

3

A. **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)**

When considering a motion to dismiss, "the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Litras v. PVM Intern. Corp.*, No. 11–cv–5695 (JFB)(AKT), 2013 WL 4118482, at *4 (E.D.N.Y. Aug. 15, 2013). To survive a motion to dismiss, the "complaint's' [f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Ocampo v. 455 Hospitality LLC*, Case No. 14-CV-9614 (KMK), 2016 WL 4926204, at *2 (S.D.N.Y. Sept. 15, 2016). However, "[t]his standard does not require 'heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Litras* at *4 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 579 (2007). "'The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a Defendants has acted unlawfully." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).n

B. **FLSA Pleading Standard**

The Second Circuit has clarified the pleading standard under the FLSA in a trio of cases: (1) *Lundy v. Catholic Health Sys.*, 711 F.3d 106 (2d Cir. 2013); (2) *Nakahata v. New York-Presbyterian Healthcare System, Inc.*, 723 F.3d 192 (2d Cir. 2013); and (3) *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85 (2d Cir. 2013).

In *Lundy*, the first case to be decided, the Second Circuit formulated its standard which requires that "'in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours.'" *DeJesus*, 726 F.3d at 88 (quoting *Lundy*, 711 F.3d at 114). Significantly the *Lundy* court "declined to make an approximation of overtime hours a necessity in all cases." *Id.* The plaintiffs in *Lundy* were scheduled to work thirty-seven and one half (37.5*)* hours or fewer

4

per week and failed to meet this standard "because of arithmetic: tallying the plausible factual allegations, we could not get beyond forty hours in any given week, and therefore to a plausible claim for overtime." *Id.* at 89; *Lundy*, 711 F.3d at 114.

In *Nakahata*, the plaintiffs alleged that they "were not compensated for work performed during meal breaks, before and after shifts, or during required trainings," but they did not allege that they "were scheduled to work forty hours in a given week." *Nakahata*, 723 F.3d at 201. Without information about the number of hours that they worked in a workweek, the plaintiffs' allegations were insufficient to "support a reasonable inference that they worked more than forty hours in a given week." *Id.*

Finally in *Dejesus*, the plaintiff's "complaint was devoid of any numbers to consider beyond those plucked from the statute. She alleged only that in 'some or all weeks' she worked more than 'forty hours' a week without being paid '1.5' times her rate of compensation," *Dejesus*, 726 F.3d at 89. The Second Circuit affirmed the district court's dismissal of the complaint because of the absence of factual allegations regarding the number of hours the plaintiff worked.

Unlike the plaintiffs in the above cases, Plaintiff in this case has pleaded the specific hours, totaling forty or more, that he was scheduled each week. (Am. Compl. ¶¶ 47-48.) In addition, he has alleged that he worked additional time for which he were not paid, the unpaid tasks that he performed, and the estimated hours that he worked per week without pay. (Am. Compl. ¶¶ 50-54.)

**II. PLAINTIFF'S FACTUAL ALLEGATIONS ARE SUFFICIENT TO STATE A CLAIM FOR OVERTIME UNDER THE FLSA AND NYLL**

    **A. Plaintiff Sufficiently Alleges 40 Hours of Work per Workweek as Well as Some Uncompensated Time in Excess of the 40 Hours.**

5

Plaintiff's specific factual allegations in his Complaint contrast with the generalized allegations in the cases cited by Defendants. Plaintiff alleged that he was scheduled to work from 9:00 AM to 5:30 PM five days per week, except during the busy seasons when he sometimes worked six days per week. (Am. Compl. ¶ 48.) Although his work day included a half hour unpaid lunch, Plaintiff alleged that he regularly worked through his lunch making sales and assisting customers and prospective customers. (Am. Compl. ¶¶ 48, 51.) Thus Plaintiff alleged forty hours of compensated work per week and additional uncompensated time worked. Furthermore, Plaintiff specified additional uncompensated time worked before and after his shift. (Am. Compl. ¶¶ 50, 52-53.) Plaintiff specified that his off-the-clock work included work at his primary job functions of making sales and assisting current and prospective customers. (Am. Compl. ¶¶ 51-52.) In addition, Plaintiff provided specifics of the number of unpaid hours that he worked each week and the tasks that he worked at during those hours. (Am. Compl. ¶ 50) ("Plaintiff used to regularly start working at or about 8:00 AM."); (Am. Compl. ¶ 51) ("Plaintiff . . . regularly worked through [his] unpaid lunch breaks – to make sales and/or assist/answer questions from current or prospective customers."); (Am. Compl. ¶ 52) ("Plaintiff . . . often had to stay 30 to 60 minutes, or more, after the end of [his] scheduled shifts to finish any sales [he was] working on, to assist/answer questions from current or prospective customers, to perform end of the day duties, to complete required paperwork, and to personally drive to Defendants' offices to drop off completed applications."); (Am. Compl. ¶ 53) ("Plaintiff . . . often fielded phone calls and emails from customers and prospective customers in the evenings and on their days off."). Plaintiff pled sufficient factual allegations to show that he worked forty or more compensated hours each week and that the unpaid hours were therefore in excess of forty (40) in a workweek. (Am. Compl. ¶¶ 47-54.)

The specificity of Plaintiff's pleading contrasts with the pleadings in the cases cited by Defendants. For example, in *Bowen v. Baldwin Union Free School District*, CV 15-6829 (JMA) (GRB), 2017 WL 4083553 (E.D.N.Y. Aug. 23, 2017), the "plaintiff failed to aver the total hours typically worked in a week, or his scheduled start time such that the court can calculate those hours." *Id.* at *5. Likewise the complaint in *Fridman v. GCS Computers LLC*, 17 Civ. 6698, 2018 WL 1581990 (S.D.N.Y. Mar. 27, 2018), only contained a conclusory statement that the plaintiff "worked a total of ten or more hours over forty hours per week" without any information on when those hours were worked or the tasks performed during those overtime hours. *Id.* at *4. In *Lusk v. Serve U Brands, Inc.*, No. 6:17-cv-06451-MAT, 2018 WL 826857 (W.D.N.Y. Feb. 12, 2018) the plaintiffs only alleged that they "worked in excess of 40 hours on numerous occasions" without being pogfaid overtime without further specifics. *Id.* at *3. Similarly, in *Park v. FDM Grp. (Holdings) PLC*, No. 16 CV 1520-LTS, 2017 WL 946298 (S.D.N.Y. Mar. 9, 2017). *rev'd on other grounds*, 2018 WL 4100524, (Aug. 28, 2018), the court found that the plaintiff, unlike Plaintiff in this case

> allege[d] in a conclusory fashion that she "regularly" worked over 40 hours and notes that she once "emailed her account manager ... that she arrives at work 'by 8:30am' and gets out 'around 6:45-7:15pm,' ... 'quite frequently' had to work on weekends and that she was not "able to even have a one hour lunch break...." Plaintiff's general allegations merely invite speculation. She does not allege that she was actually working during all of the hours she allegedly spent at the job site and, as noted above, the email message stated that the schedule described applied "4 out of 5 days a week." Such scant and imprecise information is insufficient to permit the Court to make a calculation demonstrating that Plaintiff worked more than forty hours in any week of her FDM employment.

*Id.* at *4. *Johnson v. Equinox Holdings, Inc.,* 2014 WL 3058438 (S.D.N.Y. July 2, 2014) is another case where, unlike Plaintiff with his detailed pleading, the plaintiff in *Johnson* "relie[d] solely upon the Complaint's allegation that between 2006 and 2011 he 'typically worked between

7

twenty one and fifty hours per week, with an additional three to four hours off the clock.'" *Id.* at *4.

Plaintiff has pleaded his overtime claim with sufficient detail. Unlike the above cases, the Complaint resembles the complaint in *Mendez v. U.S. Nonwovens Corp.*, 2 F. Supp. 3d 442, 457 (E.D.N.Y 2014) where the court denied defendants' motion to dismiss. In *Mendez*, the complaint alleged that three plaintiffs "worked nighttime shifts of 10.5 hours or more at least five days a week." *Id.* at 456. The *Mendez* court contrasted these allegations to *Lundy*, *Nakahata*, and *Dejesus* (decided by the Second Circuit) where the plaintiffs "alleged that they generally worked forty hours a week or less but then speculated that there might have been some weeks in which they worked more than forty hours because there were occasions when they worked additional time outside of their regularly scheduled shifts." *Id.* Like the complaint in *Mendez*, the Amended Complaint specifies Plaintiff's work shifts showing that he worked forty (40) hours or more each week. (Am.Compl. ¶ 48 ) Combined with the Complaint's allegations that Plaintiff worked one to two or more uncompensated hours each day, Plaintiff has adequately pled his claims that he is owed overtime under the FLSA and NYLL. (Am. Compl. ¶¶ 49-54.) Like the court in *Mendez*, this Court should deny Defendant's motion to dismiss Plaintiff's overtime claims.

### B. At this Stage, Prior to Discovery, Plaintiff Is Not Required to Plead Details Supporting Defendants' Knowledge of His Uncompensated Work

As stated in section I.B above, the Second Circuit standard for pleading a FLSA overtime claims is that "' a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours.'" *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 88 (2d Cir. 2013) (quoting *Lundy v. Catholic Health Sys.*, 711 F.3d 106, 114 (2d Cir. 2013). Citing two cases that were decided <u>after</u> discovery, on motions for summary judgment,

8

Defendants attempt to add to Plaintiff's burden at this early stage of the litigation with conclusory statements that Plaintiff is required to establish in his complaint that Defendants both knew that he was working extra hours and knew that he was not putting that time on his timesheets. (Def.'s Br.) Defendants have not provided any support for this proposition. Both *Briceno v. USI Servs. Grp., Inc.*, No. 09–CV–4252 (PKC), 2015 WL 5719727 (E.D.N.Y. Sept. 29, 2015), *rev'd on other grounds*, 09-CV-4252(PKC), 2016 WL 324964 (E.D.N.Y. Jan. 26, 2016) and *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869 (6th Cir. 2012) were decided on motions for summary judgment, after discovery. Although *Chodkowski v. County of Nassau*, CV 16-5770 (SJF) (GRB), 2017 WL 10637956 (E.D.N.Y. Nov. 30, 2017), was decided on a motion to dismiss the complaint pursuant to Rule 12(b)(6), the types of allegations were very different. 29 C.F.R. § 553.31—the regulation allowing swapping of shifts at public agencies without overtime being incurred that plaintiffs alleged had been violated—only applies when "the agency [is] aware of the arrangement prior to the work being done, i.e., the employer must know what work is being done, by whom it is being done, and where and when it is being done." 29 C.F.R. § 553.31(d) (emphasis added). This requirement that the employer have prior knowledge is very different from the FLSA overtime requirements.

Even if Defendants' accurately stated the pleading standard—which they did not—Plaintiff has pled a factual allegation that supports his allegation that Defendants knew or should have known that he was working uncompensated hours. Defendants put Plaintiff's cell phone number on his business cards and directed him to give his cell number to customers and prospective customers. The logical result of Plaintiff providing customers with his cell phone number was that they would call him at times that he was off from work. Customers and

9

prospective customers did call him w he "often fielded phone calls and emails from customers and prospective customers in the evenings and on their days off."

### III. DEFENDANTS CANNOT MEET THEIR BURDEN TO PROVE THAT PLAINTIFF WAS AN EXEMPT OUTSIDE SALESMAN

During his employment with them, Defendants classified Plaintiff as a non-exempt employee entitled to overtime. (Am. Compl. ¶ 43.) Now, in response to this action, Defendants claim that they can prove—using only the statements in the Complaint—that Plaintiff is an exempt employee covered by the outside sales exemption. *See* 29 U.S.C. § 213(a)(1). As the Second Circuit noted in *DeJesus v. HF Mgmt. Servs., LLC*, "[a] claim of exemption under the FLSA is an affirmative defense, and the employer bears the burden of proof in making any such claim." 726 F.3d 85, 92 n.7 (2d Cir. 2013). A plaintiff is "not required to plead facts at this stage of the proceedings to support [his] position that [he] was a non-exempt employee," *Id.* Defendants cannot meet their burden of proof.

Section 213(a)(1) of the FLSA exempts an employee employed "in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary" from the FLSA's overtime requirements. To meet the outside sales exemption, an employee must (1) have the primary duty of making sales and (2) be "customarily and regularly engaged away from the employer's place or places of business" in making those sales. 29 C.F.R. § 541.500(a). Plaintiff does not dispute that his primary duty was making sales. However, Defendants have not shown that these sales were made "away from the employer's place or places of business" as those terms are defined by the regulations.

### A. Employer's Place or Places of Business

Section 541.502 defines the second prong of the test for the outside sales exemption. In full the regulation reads:

10

> An outside sales employee must be customarily and regularly engaged "away from the employer's place or places of business." The outside sales employee is an employee who makes sales at the customer's place of business or, if selling door-to-door, at the customer's home. Outside sales does not include sales made by mail, telephone or the Internet unless such contact is used merely as an adjunct to personal calls. Thus, any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business, even though the employer is not in any formal sense the owner or tenant of the property. However, an outside sales employee does not lose the exemption by displaying samples in hotel sample rooms during trips from city to city; these sample rooms should not be considered as the employer's places of business. Similarly, an outside sales employee does not lose the exemption by displaying the employer's products at a trade show. If selling actually occurs, rather than just sales promotion, trade shows of short duration (i.e., one or two weeks) should not be considered as the employer's place of business.

29 C.F.R. § 541.502.

As the regulation makes clear, "'place of business'" has a much broader meaning under Department of Labor regulations than in common parlance." *Freeman v. Kaplan, Inc.*, 132 F.Supp.3d 1002, 1011 (N.D.Ill. 2015) (denying Kaplan's motion for summary judgment on the issue of whether plaintiff was an exempt outside sales person because the Loyola University Law School Campus ("Loyola") was one of Kaplan's places of business under the regulation). The *Freeman* court noted that Kaplan – which creates and sells review courses, including bar review courses, along with study materials – had a continuing presence on the Loyola campus. Kaplan both "regularly rented space from Loyola to put up a table and sell its courses and materials" and maintained several sales employees (Freeman among them) on the Loyola campus." *Id.* at 1011-12.

Similarly—through discovery—Plaintiff expects to show that Defendants had a continuing presence at the fixed sites where Defendants directed him to work. To dismiss

11

Plaintiff's Complaint at this time, before that discovery can take place, is premature and Defendants' motion should be denied.

      **B.    Any Fixed Site, Whether Home or Office, Used by a Salesperson as a Headquarters or for Telephonic Solicitation of Sales Is Considered One of the Employer's Places of Business**

Parsing the language of the regulation results in a clearer understanding of the meaning of "headquarters" within the context of the regulation. Obviously, the regulation does <u>not</u> refer to a location used by the employer as a headquarters such as Defendants' offices in Brooklyn. The regulation refers to a "fixed site" which is "used by a <u>salesperson</u> as a headquarters. This understanding is confirmed by the fact that employers do not (and should not) use their employees' homes as a headquarters. Instead the clear meaning of the word "headquarters" in the regulation is a fixed location out of which the employee works. Plaintiff expects that discovery will show that the fixed location and the table with signs supplied by Defendants served Plaintiff, and other Marketing Representatives, as a personal headquarters out of which he worked. Further, the regulation contemplates the employer having multiple places of business (i.e. "employer's places of business"). Plaintiff expects that discovery will show that each fixed table location at which he worked served a headquarters for him on the days when he worked there.

      **C.    Plaintiffs Sold in Customers' Homes or Businesses in the Cases, Cited by Defendants, Where Plaintiffs Were Found to Be Exempt Outside Salespeople**

The regulation explicitly defines an "employee who makes sales at the customer's place of business or, if selling door-to-door, at the customer's home," as an outside salesperson covered by the exemption. Although, the courts in the cases cited by Defendants stated in dicta that various locations did not qualify as an employer's place of business, these statements must be

taken as dicta. In each of these cases, unlike the instant case, the plaintiff employees regularly made sales in customers' homes or businesses. *See Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 223 (2d Cir. 2018) (upholding District Court's grant of summary judgment where "Flood and his co-plaintiffs were employed to engage in door-to-door solicitation to persuade customers to buy their electricity or natural gas from Just Energy"); *Cangelosi v. Gabriel Bros. Inc.*, No. 15–CV–3736 (JMF), 2015 WL 6107730, at *2 (S.D.N.Y. Oct. 15, 2015) (dismissing complaint where plaintiff spent significant time (indeed, potentially up to fifty percent of his time) conducting sales to customers at their places of business"); *Marcus v. AXA Advisors, LLC*, 307 F.R.D. 83, 90 (E.D.N.Y. 2015) ("The parties agree that 20th edition agents' sales meetings 'could take place anywhere,' including the prospective clients' homes, local restaurants, the customers' places of business, or AXA's offices. "); *Martinez v. Superior Healthplan, Inc.*, Civil Action No. SA-16-CV-870-XR, 2019 WL 1048856, at *9 (W.D. Tex. Mar. 5, 2019) (ruling that plaintiffs were exempt outside salespeople where "the majority of sales meetings took place away from Superior's offices, such as at prospects' residences or senior centers" (emphasis added)).

These cases are not analogous to Plaintiff's situation because he did not sell at customers' homes or businesses. In fact, he had to stay at the fixed table locations assigned to him by Defendants because Defendants regularly audited those location to make sure that Plaintiff was working at the fixed locations to which they had assigned him. (Am. Compl. ¶ 41.) Defendants have thus not met their burden of proof and their motion should be denied..

## CONCLUSION

For the above reasons Plaintiff respectfully requests that this Court deny Defendants' motion to dismiss his Amended Complaint.

Dated: May 3, 2019

By: /S/ David Harrison
David Harrison, Esq.
Julie Salwen, Esq.
HARRISON, HARRISON & ASSOC., LTD
110 State Highway 35, 2nd Floor
Red Bank, NJ, 07701
(718) 799-9111
(718) 799-9171 (fax)
nycotlaw@gmail.com
*Attorneys for Plaintiff, proposed FLSA Collective, and proposed Rule 23 Class*